UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVONTAY SPRAGGINS,                          Case No. 14-13845

        Plaintiff,                                    Sean F. Cox
v.                                                            United States District Judge

K. HART,                                                 Stephanie Dawkins Davis
                                                      United States Magistrate Judge
        Defendant.
_____/

**REPORT AND RECOMMENDATION ON DEFENDANT ROBERT HART'S MOTION FOR SUMMARY JUDGMENT (Dkt. 13)**

I.     **PROCEDURAL HISTORY**

On October 3, 2014, Davontay Spraggins, a prisoner in the custody of the Michigan Department of Corrections ("MDOC") currently housed at the Ionia Correctional Facility ("ICF"), filed the instant action under 42 U.S.C. § 1983, alleging violations of his civil rights. (Dkt. 1). On April 13, 2015, all defendants were terminated except for Robert Hart. On April 14, 2015, District Judge Sean F. Cox referred all pretrial matters to Magistrate Judge Michael Hluchaniuk. (Dkt. 8). On August 5, 2015, defendant Hart filed a motion for summary judgment (Dkt. 13), and on November 6, 2015, plaintiff filed his response (Dkt. 20). On January 5, 2016, the case was reassigned to the undersigned by Administrative Order. On January 8, 2016, Judge Cox referred all pretrial matters to the undersigned,

1

including defendant Hart's motion for summary judgment. (Dkt. 21). The motion is now ready for report and recommendation.

Because plaintiff did not exhaust his administrative remedies prior to filing this action, the undersigned recommends that defendant's motion for summary judgment (Dkt. 13) be **GRANTED**, and that defendant Hart be dismissed without prejudice.

## II.  FACTUAL BACKGROUND

At all times relevant to the allegations in the complaint, plaintiff was incarcerated at the G. Robert Cotton Correctional Facility (JCF), Jackson, Michigan. MDOC defendant, Robert Hart, is a Corrections Officer (C/O) at JCF. Plaintiff alleges that on May 9, 2014, when he was returning from evening "chow," and unbeknownst to him, C/O Hart deployed his Taser at a fleeing prisoner, but allegedly also struck him in the upper chest, causing him to fall on the ground, hit his head, chin and torso on the ground. (Dkt. 1, ¶ 23). After he was hit with the taser, plaintiff alleges that responding prison guards handcuffed him and escorted him to a segregation unit. (*Id*. ¶ 24). Upon arrival at the segregation unit, defendant Hart, together with two other prison guards stripped plaintiff of his clothes and held him in a shower stall for more than four and one-

half hours despite his requests to be seen by health care.[1] (*Id.*) Plaintiff alleges that another prison guard brought him a health care kite, which allowed him to be seen by health care staff on May 14, 2014. (*Id.* ¶ 27). During this visit, plaintiff was given ibuprofen and/or Motrin to help with inflammation, and was told to submit another kite if his symptoms persisted. (*Id.*) Plaintiff alleges that on May 9, 2014, he filed an administrative grievance concerning the events surrounding the facts in his complaint. (*Id.* ¶ 28). Plaintiff sues defendant Hart in his individual and official capacities for excessive use of force, denial of medical treatment, and retaliation under 42 U.S.C. § 1983.

### III.  PARTIES' ARGUMENTS

####   A.  Hart's Motion for Summary Judgment

Corrections Officer Robert Hart argues that he is entitled to summary judgment under Fed. R. Civ. P. 56(a) for three reasons: (1) because plaintiff did not properly complete the grievance process regarding his complaint allegations; (2) plaintiff cannot demonstrate that Officer Hart unnecessarily and wantonly inflicted pain upon plaintiff in violation of the Eighth Amendment; and (3) Officer Hart is a state employee and acted reasonably and within his official capacity at all times. He is therefore entitled to Eleventh Amendment and qualified immunity.

---

[1] In his Step I administrative grievance, plaintiff alleges that he was "held in segregation for about 1 hour and 45 minutes." (Dkt. 1, Ex. B).

3

1.  Exhaustion

Hart argues that Spraggins has not properly exhausted his complaint allegations because he did not properly complete the grievance process regarding those issues prior to filing his complaint. (Dkt. 13, at Pg. ID 70-72). Specifically, Hart indicates that Spraggins has filed 26 Step III grievance appeals while incarcerated at JCF. (*Id.*, Ex. B). Spraggins did file a Step I Grievance (JCF-14-05-1111-17i), which complains that though he did not know at whom Officer Hart was shooting, he was nevertheless struck by Officer Hart's taser. Nowhere in the grievance, however, did Spraggins complain that Officer Hart strip-searched him, or denied his requests for medical care. Morever, Officer Hart argues that this grievance was completed/resolved after Spraggins filed his Complaint on October 3, 2014. Under the "prison mailbox rule," papers mailed to the Clerk by prisoners are deemed to be filed on the day they are signed even if received and docketed on a later date. *Williams v. Birkett*, 670 F.3d 729, n.1 (6th Cir. 2012); *Hudson v. Martin*, 68 F. Supp. 2d 798, 800 n.2 (E.D. Mich. 1999). Therefore, according to Hart, because Spraggins did not file a Step III grievance appeal before filing this litigation, grievance (JCF-14-05-1111-17i) does not exhaust any of his complaint allegations.

2.  Excessive Force

According to Officer Hart, on May 9, 2014, he and Corrections Officer

4

Glenn Walker were conducting random pat down/clothed body searches of prisoners as they were leaving the chow hall. (Dkt. 13, Ex. C, Walker Aff. at ¶ 4). While Officer Walker was conducting a search of prisoner Mathis (#706354), Mathis assaulted Officer Walker and began to flee the area. (*Id*. at ¶ 5). During this assault, Officer Hart deployed his Electronic Control Device (ECD) or taser and struck Mathis in the jacket. However, this was ineffective at stopping Mathis because both probes of the taser failed to make contact with Mathis' body. (*Id*. at ¶ 6). Although Officer Hart was unsure to where Mathis was running, he continued to pursue Mathis, giving Mathis loud verbal commands to stop. During this pursuit, and while Mathis was approximately 4-5 feet away, Officer Hart deployed his taser a second time. This time, one prong struck Mathis in the chest area, but because he was still moving, the second prong missed and allegedly struck Spraggins who was approximately 15 feet away from Mathis. (*Id*. at ¶¶ 6-7). At this point, Mathis stopped running, pulled a white object from his left sleeve and threw it toward the roof of the J-Unit housing unit. (*Id*. at ¶ 8). Officers Hart and Walker were then able to subdue Mathis by handcuffing him. (*Id*. ¶ 9). Around this time, approximately 10-15 Level IV prisoners began to congregate in the J-Unit yard and Officer Hart began to work on crowd control as additional staff arrived. (*Id*. at ¶ 10).

      Officer Hart asserts that at no time did he "intend" to strike Spraggins with

the taser probe and neither Spraggins or Mathis was tased as a result of the second deployment. (*Id*. at ¶ 13). Officer Hart also asserts that Spraggins' allegations that he fell to the ground, struck his head, chin and torso were also false. (*Id*. at ¶ 12).

Officer Hart argues that for an effective taser deployment, the target must be struck with two probes to complete the electrical charge or impulse. According to the Prisoner Injury Report, however, Spraggins, had only been hit by one probe, and it was not on his body, but on his coat. (*Id*. at ¶ 14). Furthermore, even Spraggins' grievance responses found his claim of receiving an electrical jolt untenable since he was only struck with one prong and was not touching Mathis who was struck with the other prong. (Dkt. 13, Ex. B).

With respect to Spraggins' allegations of being strip-searched, Officer Hart asserts that he had no contact with Spraggins after the initial incident detailed above, nor was he assigned to any work in the segregation unit. Officer Hart's regular work assignment is an officer in the Level I yard. (*Id*. at Ex. C, Walker Aff., ¶ 15). Once the initial incident occurred and additional staff arrived to assist with crowd control, Sergeant Houtz gave Officer Hart his keys and directed him to begin a search for the item that Mathis had thrown toward the J-Unit roof. Once on the roof, Officer Hart was able to locate a piece of metal approximately four inches long, sharpened to a point on one end, with a white rag wrapped around the

6

other end with rubber bands on it to keep it in place. (*Id*. at ¶ 16). Additionally, according to Hart, healthcare was on the scene attending to Spraggins when he left to search the J-Unit roof. (*Id*. at ¶ 18).

Nurse Speer indicated in her Nurse Protocol that Spraggins was found sitting in the J-Unit yard. An assessment was completed and no injuries were found. Spraggins was then escorted to healthcare where his vitals were taken and he was released. (*Id*. at ¶ 14, *see also* Attachment 1). Officer Hart asserts that Spraggins suffered no more than a *de minimis* injury. Further, Officer Hart indicates that at no time did he maliciously or sadistically inflict pain towards Spraggins. At best, Spraggins' allegations amount to a claim that Hart acted with negligence or recklessness, which is insufficient to establish a constitutional violation. *Ahlers v. Schebil*, 188 F.3d 365, 373 (6th Cir. 1999).

   3.  Immunity

Hart first argues that he is entitled to Eleventh Amendment immunity because he is an employee of the State of Michigan who acted in his official capacity. The State of Michigan has not consented to suit, and Hart therefore enjoys Eleventh Amendment immunity in his official capacity.

Hart also argues that he is entitled to qualified immunity for any civil damages because his conduct as outlined above did not violate any clearly established statutory or constitutional rights of which a reasonable person would

have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999). Officer Hart presents the three-part test employed by the Sixth Circuit to determine whether a government official is entitled to the defense of qualified immunity: (1) whether a constitutional violation has occurred; (2) whether the right that was violated was a clearly established right or which a reasonable person would have known; and (3) whether the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively reasonable in light of the clearly established constitutional rights. *Saucier v. Katz*, 533 U.S. 194, 201-202 (2001); *Higgason v. Stephens*, 288 F.3d 868, 876-877 (6th Cir. 2002). While the initial burden is on the defendant to present facts that, if true, would entitle him to immunity, the ultimate burden of proof falls on the plaintiff to show that the defendant violated a right so clearly established that any official in defendant's position would have clearly understood that he was under an affirmative duty to refrain from such conduct. *Noble*, 87 F.3d at 161. For the reasons discussed above, Hart contends that he is entitled to summary judgment.

    B.    <u>Spraggins' Response</u>

Spraggins argues that he filed a Step I grievance on May 10, 2014. He indicates that he received a response to that grievance on May 22, 2014 stating that the complaint was "false" based upon defendant Hart's report. Plaintiff filed a

Step II appeal on May 28, 2014, and received a response "on or around 6/19/14" denying his grievance. Plaintiff indicates that on or around June 20, 2014 he filed a Step III appeal and received a response on November 20, 2014 again denying his grievance. Plaintiff states that he verbally discussed his grievance with shift command and was told that there would be no investigation into his grievance. This, according to Spraggins, shows that he attempted to resolve the issue before filing his grievance. Spraggins also alleges that he properly exhausted his administrative remedies before he filed this lawsuit.

With respect to Hart's claim that there was no Eighth Amendment violation, Spraggins asserts that the firing of a taser into a crowd of people is a clear violation of plaintiff's right to be free from cruel and unusual punishment. Plaintiff claims that Hart recklessly fired his taser at a group of inmates in an attempt to hit one fleeing prisoner. This, according to plaintiff, is unethical and shows the use of excessive force to an innocent bystander, in this case Spraggins. For this reason, Spraggins claims that Hart is not protected by qualified immunity.

## IV.   LEGAL ANALYSIS & CONCLUSIONS

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e, requires a prisoner to exhaust all administrative remedies prior to filing a § 1983 claim. Specifically, 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal

9

law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Section 1997e(a)'s "exhaustion requirement applies to all prisoners seeking redress for prison circumstances or occurrences." *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. In *Jones v. Bock*, 549 U.S. 199 (2007), the Supreme Court held that "failure to exhaust is an affirmative defense under the PLRA," and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. "Compliance with prison grievance procedures . . . is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218. "Congress has provided in § 1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001). "[P]roper exhaustion of administrative remedies is necessary." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006).

In *Jones v. Bock*, the Supreme Court also held that the burden rests on the defendant to show that a plaintiff failed to exhaust when asserting exhaustion as an affirmative defense. *Id.* Accordingly, exhaustion is satisfied if plaintiff complied with the applicable MDOC grievance procedure and defendants bear the

burden of showing otherwise. *Kramer v. Wilkinson*, 226 Fed. Appx. 461, 462 (6th Cir. 2007) (A prisoner-plaintiff "does not bear the burden of specially pleading and proving exhaustion; rather, this affirmative defense may serve as a basis for dismissal only if raised and proven by the defendants."). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden - the plaintiff on a claim for relief or the defendant on an affirmative defense - his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.

MDOC Policy Directive 03.02.130, "Prisoner/Parolee Grievances" (effective date 07/09/2007) governs plaintiff's claims here. That policy states, in relevant part:

> E. Grievances may be submitted regarding alleged violations of policy or procedure or unsatisfactory conditions of confinement which directly affect the grievant, including alleged violations of this policy and related procedures.

11

\* \* \*

P. Prior to submitting a written grievance, the grievant shall attempt to resolve the issue with the staff member involved within two business days after becoming aware of a grievable issue, unless prevented by circumstances beyond his/her normal control or if the issue falls within the jurisdiction of the Internal Affairs Division in Operations Support Administration. If the complaint is not resolved, the grievant may file a Step I grievance. The Step I grievance must be filed within five business days after the grievant attempted to resolve the issue with staff.

\* \* \*

R. A grievant shall use the Prisoner/Parolee Grievance form (CSJ-247A) to file a Step I grievance; a Prisoner/Parolee Grievance Appeal form (CSJ-247B) shall be used to file a Step II or Step III grievance. The forms may be completed by hand or by typewriter however, handwriting must be legible. The issues shall be stated briefly but concisely. Information provided shall be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

\* \* \*

FF. A grievant may file a Step III grievance if s/he is dissatisfied with the Step II response or does not receive a timely response. To file a Step III grievance, the grievant must send a completed Step III grievance, using the Prisoner/Parolee Grievance Appeal form (CSJ-247B), to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no response was received, within ten business days after the date the

response was due, including any extensions.

GG. The Grievance and Appeals Section shall be the respondent for the Step III grievances on behalf of the Director.  Each grievance received at Step III, including those which may be rejected, shall be logged on a computerized grievance tracking system. The Grievance and Appeals Section shall forward grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS).  The BHCS Administrator shall ensure the grievance is investigated and a response is provided to the Grievance and Appeals Section in a timely manner.  The Manager of the Grievance and Appeals Section shall ensure that any additional investigation is completed as necessary for each Step III grievance accepted, including referral to the Internal Affairs Division and, for disability issues, to the Equal Employment Opportunity Office within the Bureau of Human Resources, as appropriate, and that a copy of the Step III response is provided to the grievant.

Plaintiff failed to exhaust his administrative remedies here, as he filed the instant complaint before receiving his Step III Grievance Response - in contravention to the requirements set forth in the above-noted MDOC grievance policy.  The parties' versions of the chronological sequence as to  the processing of plaintiff's grievances roughly align.  Specifically, plaintiff's Step I Grievance signed May 10, 2014 was received by MDOC on May 13, 2014, his Step II Grievance signed on May 28, 2014 was received on June 13, 2014, and his Step III Grievance was received on June 25, 2014.  Plaintiff received responses to his Step I Grievance and Step II Grievance on May 22, 2014 June 19, 2014 respectively.

On October 3, 2014, before resolution of the Step III Grievance, plaintiff filed the instant action. Since the initiation of this case MDOC has responded to plaintiff's Step III grievance - upholding the Step I and Step II decisions denying the validity of plaintiff's claims on November 20, 2014. (Dkt. 13, Ex. B). Thus, plaintiff's administrative remedies have now been exhausted. Yet, notwithstanding, the Court must dismiss plaintiff's claim, because plaintiff cannot perfect the exhaustion requirement during the pendency of his case. *See Roberts v. Lamanna*, 45 Fed. Appx. 515 (6th Cir. 2002) (plaintiff "cannot exhaust [administrative] remedies during the pendency of the action"); *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999); *Wyatt v. Leonard*, 193 F.3d 876, 878-79 (6th Cir. 1999); *Boles v. Overton*, 396 F. Supp. 2d 808, 809 (E.D. Mich. 2005) ("As exhaustion of internal remedies is a *precondition to filing* an action in federal court, the Sixth Circuit has held that a prisoner cannot satisfy Section 1997e by exhausting administrative remedies during the pendency of the federal suit.") (emphasis in original).

 Moreover, there are no curative measures which will save plaintiff's action from operation of the bar. The Court does not have discretion to waive the exhaustion requirement. *Wyatt*, 193 F.3d at 879. And, the "substantial compliance" doctrine, which can negate operation of the bar where the operative facts underlying a prisoner's claims predate enactment of the PLRA, does not

apply in this case as plaintiff's claims arose well after the PLRA's enactment. *See Brock v. Kenton Cty.*, 93 Fed. App'x. 793, 799 (6th Cir. 2004) ("We have allowed substantial compliance only in the limited circumstance where the events giving rise to the prisoner's claim occurred prior to the effective date of the PLRA."). Thus, because the merits of the claim have not been addressed, the proper remedy is to dismiss plaintiff's complaint without prejudice. *See Thaddeus-X v. Wozniak*, 2000 WL 712383 (6th Cir. 2000).

Because the undersigned has determined that plaintiff failed to exhaust his administrative remedies, it is unnecessary to determine whether Hart committed a constitutional violation at this point.

## V. RECOMMENDATION

For the above-stated reasons, the undersigned recommends that defendant's motion for summary judgment (Dkt. 13) be **GRANTED**, and that defendant Hart be dismissed without prejudice.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: February 4, 2016             s/Stephanie Dawkins Davis
                                   Stephanie Dawkins Davis
                                   United States Magistrate Judge

## **CERTIFICATE OF SERVICE**

      I certify that on February 4, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record and that I have mailed by U.S. Postal Service to the following non-ECF participant: Davontay Spraggins, #794573, Michigan Reformatory, 1342 West Main Street, Ionia, MI 48846.

                                                s/Tammy Hallwood
                                                Case Manager
                                                (810) 341-7887
                                                tammy_hallwood@mied.uscourts.gov